**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**

JANE ANNE LEFKOWITZ                              CIVIL ACTION

VERSUS                                           NO. 21-1578

ADMINISTRATORS OF THE TULANE                     SECTION "B"(5)
EDUCATIONAL FUND, ET AL.

<u>ORDER AND REASONS</u>

Before the court are defendants' motion to dismiss (Rec. Doc.
10), and plaintiff's memorandum in opposition (Rec. Doc. 28),
For the following reasons, and subject to below noted conditions,

**IT IS ORDERED** that the motion to dismiss is **GRANTED.**

I.   <u>FACTS AND PROCEDURAL HISTORY</u>

This action arises from civil torts claims, as well as a claim
for federal disability discrimination. *Pro se* plaintiff Jane Anne
Lefkowitz names as defendants Administrators of Tulane Educational
Fund ("Tulane"), Troy Smith, Nicole Smith, and Grinasha Dillon
("Individual Tulane Defendants") (collective "defendants"). Rec.
Doc. 1-2 (Entire State Court Record).

Plaintiff is a former Tulane employee who worked as a Peer
Support Specialist[1] at the Early Psychosis Intervention Clinic –
New Orleans ("EPIC-NOLA"). Rec. Docs. 9-10.  As a Peer Support
Specialist, she was required to perform support services for

---

[1] The Louisiana Department of Health defines a Peer Support Specialist as "a
person in recovery from a behavioral health condition (mental health, substance
use, or co-occurring) who provides mentoring, guidance, and support services
and offers their skills to others who are experiencing behavioral health
challenges and receiving behavioral health services." Rec. Doc. 10.

patients receiving treatment for behavioral health conditions. From the outset of plaintiff's employ at Tulane's facility, she contends that Tulane was fully aware that she had a pre-existing mental health disability requiring workplace sensitivity and training. Rec. Doc. 9.

She alleges being subjected to a mirage of violent episodes, insults, and harassment by her co-workers and supervisors during the 2019 calendar year.[2] *Id.* Specifically, she asserts defendants Grinasha Dillon and Nicole Smith were harassing her repeatedly when they referred to Tulane patients as "crazy." *Id.* According to plaintiff, both Dillon and Smith knew that such patient name-calling would agitate and upset her. *Id.* She alleges harassment also occurred when co-workers and supervisors placed a sign on the workplace breakroom refrigerator depicting "crazy" people and ridiculing the patients. Rec. Doc. 9. Additionally, plaintiff asserts emotional injury when Tulane denied her credit for work performed and denied her an opportunity to present a "long-prepared for presentation." *Id.* She also claims to have suffered severe emotional distress resulting from exclusion in workplace events and team-building outings. *Id.*

---

[2] Plaintiff states that she endured several incidents of harassment throughout the 2019 year; however, plaintiff failed to expand on what specific days she was harassed. The only incidents plaintiff discusses in detail are those occurring on September 30, 2019.

On or about September 16, 2019, plaintiff met with Tulane supervisors Michael Dyer and Ashley Weiss to discuss the abovementioned allegations of harassment. *Id.*  In an alleged hostile tone, Weiss informed plaintiff that she needed to address her concerns to Philip Wattle in Human Resources. *Id.*  On or about September 18, 2019, plaintiff met with Mr. Wattle and requested transfer to a less hostile and more accommodating position within Tulane. Rec. Doc. 9. However, Mr. Wattle denied her request and told plaintiff she would have to "work it out" in her current employment position. *Id.*  Thereafter, plaintiff prepared a list of requested disability accommodations along with her allegations of harassment, and delivered it to Tulane's Clinic Manager, Bess Hart, and Program Manager, Michael Dyer. Upon receiving plaintiff's accommodation request, Tulane responded the same day with specific accommodation suggestions, which plaintiff accepted. *Id.*

On or about September 30, 2019, plaintiff alleges Tulane IT Manager, Troy Smith loudly criticized her for not being sufficiently able to use or repair her work computer. Rec. Doc. 9. Soon thereafter, defendants Dillon and Smith allegedly entered plaintiff's workspace and inappropriately invaded her body space, "clicking ink pens behind her and close to her," causing the plaintiff to become more upset. *Id.* Plaintiff asserts Dillon and Smith told her that "she was only imagining their harassment of her" and that plaintiff was "a psychotic." *Id.*  Consequently,

3

plaintiff alleges she suffered a mental breakdown at Tulane, resulting in Tulane immediately telling her to leave the workplace. *Id.* Plaintiff asserts the removal from the workplace and refusal to allow her to resume work constitute constructive termination of her employment. *Id.*

On or about September 29, 2020, plaintiff filed a petition for damages in the Civil District Court for the Parish of Orleans. Rec. Doc. 1-2. That Court dismissed all claims against the individual Tulane defendants and all state law employment discrimination claims against Tulane. *Id.; see also* Rec. Doc. 10-2 (state court Judgment). The state court then ordered plaintiff to file an amended petition in accordance with Louisiana Code of Civil Procedure articles 863 and 891 relative to remaining claims against Defendant Tulane. Rec. Doc. 10.

On or about July 28, 2021, plaintiff filed a supplemental and amending petition for damages in Civil District Court, re-pleading her claims against all the individual defendants and asserting federal employment discrimination claims against Tulane. Rec. Doc. 1-2. On or about August 19, 2021, defendants removed the matter to this Court based on federal question jurisdiction. Rec. Doc. 1 (Notice of Removal). Subsequently, on September 8, 2021, plaintiff sought leave to file a second supplemental and amending complaint, re-alleging all claims against the individual Tulane defendants and Tulane. Rec. Doc. 7.

4

Specifically, plaintiff alleges claims against Tulane for wrongful termination, vicarious liability for employees' tortious conduct, employment discrimination, failure to accommodate under Section 504 of the Rehabilitation Act, disability discrimination, negligence, false arrest, defamation, and intentional infliction of emotional distress. Rec. Doc. 9. (Second Supplemental and Amending Petition). Against the individual Tulane defendants, plaintiff alleges claims for intentional infliction of emotional distress, unspecified "Louisiana tort law violations," and failure to accommodate under Section 504 of the Rehabilitation Act. Rec. Doc. 9, p. 6.

On or about October 4, 2021, defendants filed a motion to dismiss, seeking to dismiss all claims against the individual Tulane defendants and Tulane sounding in tort and wrongful termination. Rec. Doc. 10.  However, defendants' motion did not address plaintiff's claims against defendants under Section 504 of the Rehabilitation Act for failure to accommodate. *See id.*  On or about December 6, 2021, plaintiff filed a memorandum in opposition to defendants' motion to dismiss. Rec. Doc. 28. Plaintiff did not address the arguments defendants posed; but instead, merely stated there is corroborating evidence of what she alleged in her petition. *Id.*

II.  **LAW AND ANALYSIS**

**A. Standard of Review**

Federal Rule of Civil Procedure 12(b)(6) provides that an action may be dismissed "for failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). However, such a motion is "viewed with disfavor and is rarely granted." *Kaiser Aluminum & Chem. Sales, Inc. v. Avondale Shipyards, Inc.*, 677 F.2d 1045, 1050 (5th Cir. 1982). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim for relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2008)). "Factual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 556. A claim is facially plausible when the plaintiff has pleaded facts that allow the court to "draw a reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 570.

On a motion to dismiss, asserted claims are liberally construed in favor of the claimant, and all facts pleaded are taken as true. *Leatherman v. Tarrant Cnty. Narcotics Intelligence & Coordination Unit*, 507 U.S. 163, 164 (1993); *see also Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322-23 (2007). Although a court required to accept all "well-pleaded facts" as true, it is not required to accept legal conclusions as true. *Iqbal*, 556 U.S. at 677-78. "While legal conclusions can provide

6

the framework of a complaint, they must be supported by factual allegations." *Id.* at 679.   Similarly, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements" will not suffice. *Id.* at 678. If factual allegations are insufficient to raise a right to relief above the speculative level, or if it is apparent from the face of the complaint that there is an "insuperable" bar to relief, the claim must be dismissed.  *Moore v. Metro. Human Serv. Dep't*, No. 09-6470, 2010 WL 1462224, at * 2 (E.D. La. Apr. 8, 2010) (Vance, C.J.) (citing *Jones v. Bock*, 549 U.S. 199, 215 (2007)); *Carbe v. Lappin*, 492 F.3d 325, 328 n. 9 (5th Cir. 2007).

When a party is proceeding *pro se*, their filings are to be "liberally construed." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007). "[A] *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." *Id.* (quoting *Estelle v. Gamble*, 429 U.S. 97, 106 (1976)). The Court should "examine all of [the] complaint, including attachments." *Clark v. Huntleigh Corp.*, 119 F. App'x 666, 667 (5th Cir. 2005). Nevertheless, a pro se complaint must still "set forth facts giving rise to a claim on which relief may be granted." *Johnson v. Atkins*, 999 F.2d 99, 100 (5th Cir. 1993).

## B. Plaintiff's Failure to Address Tulane's Opposition Arguments

The Fifth Circuit has noted that a plaintiff's failure to defend her claims beyond her complaint constitutes abandonment of

those claims. *Black v. N. Panola Sch. Dist.*, 461 F.3d 584, 588 n.1 (5th Cir. 2006); *Heisler v. Kean Miller, LLP*, No. CV 21-724, 2021 WL 3852261 (E.D. La. Aug. 27, 2021). District courts within the Fifth Circuit have expressly applied this abandonment rationale in dismissing a plaintiff's claims. *See, e.g., Heisler*, 2021 WL 3852261 at *2; *Arkansas v. Wilmington Tr. Nat'l Ass'n*, No. 3:18-CV-1481-L, 2020 WL 1249570, at *1 (N.D. Tex. Mar. 16, 2020); *Trieger v. Ocwen Loan Servicing, LLC*, No. 3:19-CV-00100-L, 2019 WL 3860689 (N.D. Tex. Aug. 15, 2019).

In *Trieger v. Ocwen Loan Servicing, LLC*, the Northern District of Texas court concluded that the plaintiffs abandoned their RESPA claim against defendant Ocwen Loan Servicing, LLC because the plaintiffs did not file a response to Ocwen's motion to dismiss. No. 3:19-CV-00100-L, 2019 WL 3860689, at *9 (N.D. Tex. Aug. 15, 2019). In granting defendant's motion, the court noted that when "a plaintiff fails to defend a claim in response to a motion to dismiss ... the claim is deemed abandoned." *Id.* See, *e.g., Heisler*, 2021 WL 3852261 at *3; *Mocsary v. Ard*, No. CV 17-1713-SDD-EWD, 2018 WL 4608485, at *13 (M.D. La. Sept. 25, 2018); *U.S. ex rel. Woods v. SouthernCare, Inc.*, 2013 WL 1339375 at *7 (S.D. Miss. Mar. 30, 2013); *Dean v. One Life Am., Inc.*, No. 4:11-CV-203-CWR-LRA, 2013 WL 870352, at *2 (S.D. Miss. Mar. 7, 2013); *Kellam v. Servs.*, No. 12-352, 2013 WL 12093753, at *3 (N.D. Tex. May 31, 2013), *aff'd sub nom.*, *Kellam v. Metrocare Servs.*, 560 F. App'x

8

360 (5th Cir. 2014); *Alexander v. Brookhaven Sch. Dist.*, No. 3:07-CV-640-DPJ-JCS, 2009 WL 224902, at *4 (S.D. Miss. Jan. 28, 2009), *aff'd*, 428 F. App'x 303 (5th Cir. 2011).

Review of plaintiff's opposition shows that plaintiff wholly failed to defend her claims against defendants' arguments. Plaintiff's opposition makes no mention whatsoever as to any of defendants' arguments. As a result, plaintiff has waived her right to respond to those arguments. Nevertheless, the Court will not dismiss plaintiff's complaint with prejudice merely because she failed to properly respond. *See Webb v. Morella*, 457 F. App'x 448 (5th Cir. 2012); *Ramsey v. Signal Delivery Service, Inc.*, 631 F.2d 1210, 1214 (5th Cir. 1980) (overturning district court's decision granting defendants' motion to dismiss because the motion was unopposed because dismissal with prejudice is a severe sanction). The Fifth Circuit has held it is improper for a district court, without considering the merits of the arguments before it, to grant a motion to dismiss solely because it is unopposed. *See Heisler*, 2021 WL 3852261 at *3. Accordingly, the Court will only grant defendants' motion to dismiss if it has merit.

**C. Plaintiff's claims**

**i.   State Law Tort Claims Against Individual Party Defendants Troy Smith, Nicole Smith, and Grinasha Dillon**

The principle of vicarious liability or *respondeat superior* is codified in Louisiana Civil Code article 2320. This article

provides that an employer is liable for the tortious acts of its employees that are performed "in the exercise of the functions in which they are employed." La. Civ. Code Ann. art. 2320. Thus, the two issues for the Court to address is whether: (1) plaintiff properly alleged tortious conduct against the individual defendants; and (2) whether these alleged actions were sufficiently employment-related that vicarious liability should attach. *See Olmeda v. Cameron Int'l Corp.*, 139 F. Supp. 3d 816 (E.D. La. 2015)

The Louisiana Supreme Court has outlined the parameters of the test for vicarious liability as follows:

> While the course of employment test refers to time and place, the scope of employment test examines the employment-related risk of injury. The inquiry requires the trier of fact to determine whether the employee's tortious conduct was "so closely connected in time, place and causation to his employment-duties as to be regarded a risk of harm fairly attributable to the employer's business, as compared with conduct motivated by purely personal considerations entirely extraneous to the employer's interests."

*Russell v. Noullet*, 721 So.2d 868, 871 (La.1998) (quoting *LeBrane v. Lewis*, 292 So.2d 216, 218 (La.1974)). In *LeBrane*, the Louisiana Supreme Court identified four factors to be considered in determining vicarious liability: (1) whether the tortious act was primarily employment rooted; (2) whether the tortious act was reasonably incidental to the performance of the employee's duties; (3) whether the act occurred on the employer's premises; and (4)

whether it occurred during the hours of employment. *LeBrane*, 292 So.2d at 218; *see also Olmeda v. Cameron Int'l Corp.*, 139 F. Supp. 3d 816 (E.D. La. 2015); *Baumeister v. Plunkett*, 673 So.2d 994, 996 (La.1996). It is not necessary that all four *LeBrane* factors be met to find vicarious liability. *See Bates v. Caruso*, 881 So.2d 758, 762 (La.Ct.App.2004).

In *Baumeister v. Plunkett*, the Louisiana Supreme Court held that the court of appeals erred in finding a hospital liable for the sexual battery committed by one of its nursing supervisors on a co-employee during working hours on the hospital's premises. 673 So. 2d at 999.  In so holding, the state Supreme Court embraced the four-part test for vicarious liability, mentioned *supra*. *Id.* at 996-97. The Court found that factors (3) and (4) were met, but not (1) and (2). The Court concluded that the "sexual assault was entirely extraneous to [the] employer's interests." *Id.* at 1000. Moreover, the court found that the attack was motivated by personal interests and the assault was not connected to the employee's job in any way. *Id.*

Here, defendants argue that plaintiff's state law tort claims against the individually named Tulane defendants should be dismissed under the doctrine of vicarious liability. Rec. Doc. 10. Defendants' argument rests on their contentions that all the individual defendants were acting within the course and scope of their employment at the time of the alleged torts. *Id.* Although

plaintiff did not address this argument in her opposition, she admitted in her petition that Tulane *is* vicariously liable for the actions of the individual defendants. *See* Rec. Doc. 28; Rec. Doc. 9 at 35. Upon review, plaintiff's tortious conduct claims against Troy Smith, Nicole Smith, and Grinasha Dillon must be dismissed under the doctrine of vicarious liability.[3]

First and foremost, the alleged tortious actions plaintiff describes in her complaint do not rise to the level of tort violations. Plaintiff asserts the defendants intentional inflicted emotional distress by "clicking ink pens" close to her workspace, using a raised voice to talk to her, and calling the Tulane

---

[3] Under the right circumstances, plaintiff's claim could have been dismissed under the full faith and credit clause, codified at 28 U.S.C. § 1738. Essentially, this Clause states: "Full Faith and Credit shall be given in each State to the public Acts, Records, and judicial Proceedings of every other State. And the Congress may by general Laws prescribe the Manner in which such Acts, Records and Proceedings shall be proved, and the Effect thereof." U.S. Const. art. IV, § 1. The Full Faith and Credit Act expands the Clause and requires federal courts to give full faith and credit to state court proceedings:

> The records and judicial proceedings of any court of any ... State, Territory or Possession ... shall have the same full faith and credit in every court within the United States and its Territories and Possessions as they have by law or usage in the courts of such State, Territory or Possession from which they are taken.

28 U.S.C. § 1738. Thus, a federal court is required to give a state-court judgment the same preclusive effect that it would have under the law of the state in which it was rendered. *Migra v. Warren City Sch. Dist. Bd. of Educ.*, 465 U.S. 75, 81, 104 S.Ct. 892, 79 L.Ed.2d 56 (1984). Given the Civil District Court for the Parish of Orleans rendered judgement dismissing all plaintiff's claims against the individual Tulane defendants, this Court could find plaintiff's re-alleged tort claims against these defendants to be precluded. However, because Defendants failed to assert *res judicata* as an affirmative defense, this Court is barred from precluding plaintiff's claims under this doctrine *sua sponte*. *Mowbray v. Cameron Cty., Tex.*, 274 F.3d 269 (5th Cir. 2001) ("Generally, *res judicata* is an affirmative defense that must be pleaded, not raised sua sponte.)

patients "crazy." Rec. Doc. 9. None of these actions allegedly done by the defendants rise to level of "extreme and outrageous" conduct required for plaintiff's claim. *See Brackens v. Stericycle, Inc.*, 829 F. App'x 17, 21(5th Cir. 2020) (stating a plaintiff must "demonstrate that the conduct he experienced went far beyond insulting, threatening, annoying, or oppressive; it had to be so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious and utterly intolerable in a civilized community.")

Even assuming *arguendo* that the first element had been satisfied, defendants' alleged tortious conduct was done during the course and scope of their employment. This case can be distinguished from *Baumeister* because each of the Tulane employees' actions were connected to their respective job positions. Troy Smith's alleged act of criticizing plaintiff for not being sufficiently able to use or repair her work computer, was done within the course and scope of his employment. Mr. Smith is Tulane's IT manager, therefore it's his job to enter employees' workspaces, tend to their computers and other IT devices, and discuss IT related matters with co-workers. Additionally, per plaintiff's complaint, this act occurred on Tulane's premises and during business hours as she was "on duty and working in her Tulane clinic workspace" when Mr. Smith approached her. Rec. Doc. 9. Likewise, defendants Dillon and Smith's actions also occurred

during the course and scope of their employment. Plaintiff contends Dillon and Smith entered her workspace during work hours and inappropriately invaded her body space, "clicking ink pens behind her and close to her." These actions occurred on Tulane's premises as all parties were in plaintiff's "workspace" and plaintiff stated in her complaint that she was at work during this incident. Further, the act of "clicking ink pens" was incidental to both Dillon and Smith's employment duties as both defendants would likely need to have ink pens handy to perform certain functions of their jobs and "click" them in order to use them. Accordingly, plaintiff's claims against these individual defendants are dismissed.

### ii.  State Law Employment Discrimination Claims Against Tulane

a. Plaintiff's claims under Civil Code article 2315[4]

Under Louisiana law, when two statutes conflict, the "statute specifically directed to the matter at issue must prevail as an exception to the statute more general in character." *Kennedy v. Kennedy*, 699 So.2d 351, 358 (La. 1996). The Louisiana legislature has developed a specific statutory scheme to address employment discrimination, Louisiana Employment Discrimination Laws (LEDL).

---

[4] The Orleans Parish Civil District Court previously ruled in Tulane's favor, holding plaintiff had no cause of action for employment discrimination under La. Civil Code article 2315. Rec. Doc. 10-2 (state court judgment). However, plaintiff reasserted this claim against Tulane in her Second Supplemental and Amending Complaint. Because the Court cannot apply the doctrine of *res judicata sua sponte*, the Court must evaluate plaintiff's claims once more for the purposes of defendants' motion.

*See Jackson v. Country Club of Louisiana, Inc.*, No. CV 20-452-SDD-EWD, 2021 WL 261538, *7 (M.D. La. Jan. 26, 2021). The LEDL provides employees with a state cause of action against employers, employment agencies, and labor organizations, and specifies the remedies available in civil discrimination suits. La. Rev. Stat. § 23:303(A).

In *Roberson-King v. Louisiana Workforce Commission*, the Fifth Circuit affirmed a district court's dismissal of a plaintiff's employment discrimination claims brought generally under Article 2315, finding that "[t]he Louisiana legislature has developed a specific statutory scheme to address employment discrimination." 904 F.3d 377 (5th Cir. 2018). The Court went on to note that the plaintiff "identifie[d] no Louisiana state court decisions permitting recovery for employment discrimination under Article 2315," and "[b]ecause such a cause of action is inconsistent with the LEDL," the district court properly dismissed this claim. *Id.* at 380.

Like the plaintiff in *Roberson-King*, this plaintiff also alleged state law employment discrimination claims but failed to cite the appropriate provisions under Louisiana Employment Discrimination Law ("LEDL"). Instead, plaintiff argues that Tulane is liable for employment discrimination under Civil Code article 2315. Defendants respond by asserting plaintiff does not have a

cause of action under that general provision; rather, plaintiff should have argued a claim under the LEDL.

Numerous Louisiana and federal cases have found that employment discrimination claims cannot be maintained under general Louisiana Civil Code articles. *See Jackson v. Country Club of Louisiana, Inc.*, No. CV 20-452-SDD-EWD, 2021 WL 261538, *6 (M.D. La. Jan. 26, 2021) (dismissing plaintiffs' employment discrimination claims brought under La. Civil Code article 2315); *Roberson-King v. Louisiana Workforce Comm'n, Off. of Workforce Dev.*, 904 F.3d 377 (5th Cir. 2018); *McCoy v. City of Shreveport*, 492 F.3d 551, 563 (5th Cir. 2007) (holding La. Civil Code article 2315 cannot serve as the basis for a cause of action that is derived from employment discrimination). Because the instant cause of action sounding in employment discrimination cannot be maintained under general Louisiana codal article 2315, the former cause of action is dismissed as a matter of law.

 b. Plaintiff's claims under the LEDL[5]

Although plaintiff alleged employment discrimination claims against Tulane, she failed to assert the proper statute, *e.g.* the LEDL. Nevertheless, even assuming plaintiff had articulated the proper statute, the Court must still dismiss the claim.

The LEDL defines "employer" as follows:

---

[5] Orleans Parish Civil District Court also ruled in Tulane's favor on this issue, holding plaintiff had no cause of action against Tulane under the LEDL. *See* Rec. Doc. 10-2 (state court judgment).

"Employer" means a person, association, legal or commercial entity, the state, or any state agency, board, commission, or political subdivision of the state receiving services from an employee and, in return, giving compensation of any kind to an employee. The provisions of this Chapter shall apply only to an employer who employs twenty or more employees within this state for each working day in each of twenty or more calendar weeks in the current or preceding calendar year. "Employer" shall also include an insurer, as defined in R.S. 22:46, with respect to appointment of agents, regardless of the character of the agent's employment. This Chapter shall not apply to the following:

…

(b) Employment of an individual by **a private educational or religious institution or any nonprofit corporation**, or the employment by a school, college, university, or other educational institution or institution of learning of persons having a particular religion if the school, college, university, or other educational institution or institution of learning is, in whole or in substantial part, owned, supported, controlled, or managed by a particular religion or by a particular religious corporation, association, or society, or if the curriculum of the school, college, university, other educational institution, or institution of learning is directed toward the propagation of a particular religion.

La. Stat. Ann. § 23:302.

In the instant case, there is no disputing that defendant is not included in the statute's definition of an employer.[6] Tulane is both a private educational institution and a non-profit corporation, both of which are explicitly excluded under the LEDL. This decision is also consistent with the Court's previously issued

---

[6]  In her complaint, plaintiff stated that Tulane was "a Louisiana non-profit corporation conducting business as a non-profit institution of higher learning …." Rec. Doc. 9 at 7.

rulings on this issue concerning the defendant, Administrators of the Tulane Educational Fund. *See Hartz v. Adm'rs of the Tulane Educ. Fund*, 275 F. App'x 281, 286 (5th Cir. 2008) ("Tulane is a non-profit educational institution."); *Rubinstein v. Admin. of the Tulane Educ. Fund*, No. 08-cv4780, slip op.10 at 1-2 (E.D. La. Feb. 9, 2009) (Zainey, J.) (dismissing LEDL claims because Tulane is exempt from coverage); *Howard v. Lemmier,* No. CIV.A. 10-1814, 2011 WL 5508995 (E.D. La. Oct. 20, 2011), *report and recommendation adopted*, No. CIV.A. 10-1814, 2011 WL 5508978 (E.D. La. Nov. 10, 2011) (Roby, J.) ("Tulane University, as a private entity, is not a state actor."); *Berenson v. Administrators of Tulane Univ. Educ. Fund,* No. CV 17-329, 2017 WL 2955728 (E.D. La. July 11, 2017) (Vance, J.) (noting that Tulane is not an employer under the LEDL and dismissing the LEDL claim). Accordingly, even if plaintiff asserted an LEDL claim against defendants, plaintiff's claim would still be dismissed.

### iii. <u>Wrongful Termination and Constructive Discharge Against Tulane</u>

It is well known that Louisiana follows the doctrine of employment-at-will. This principle is codified in Article 2747 of the Louisiana Civil Code.  La. Civ. Code art. 2747 ("A man is at liberty to dismiss a hired servant attached to his person or family, without assigning any reason for so doing. The servant is also free to depart without assigning any cause.") Under this

doctrine, both employers and employees are free to end the employment relationship at any time, and for any reason, without liability "provided that the termination violates no statutory or constitutional provision ..." *See Johnson v. Acosta*, 2010 WL 4025883, at *6 (E.D.La. 2010); *see also Stewart v. Courtyard Mgmt. Corp.*, 155 F. App'x 756, 758 (5th Cir. 2005); *Fletcher v. Wendelta, Inc.*, 43,866-CA (La.App. 2 Cir. 1/14/09) 999 So.2d 1223, 1229-30. In other words, an employer is free to terminate the services of an employee without reason, unless specifically prohibited by the U.S. Constitution, the Constitution of Louisiana, or statute. *Stewart v. Courtyard Mgmt. Corp.*, 155 F. App'x 756, 758 (5th Cir.2005) (citing *Gilbert v. Tulane Univ.*, 909 F.2d 124, 125 (5th Cir.1990); *Thorns v. Monroe City Sch. Bd.*, 542 So.2d 490, 492 (La.1989); *Robinson v. Healthworks Int'l, L.L.C.*, 837 So.2d 714, 721 (La.App.2d Cir.2003).

For plaintiff's claim of wrongful termination to be valid, there must either be a finding that she was hired for a fixed term or that her termination violated an existing law. *See Stewart v. Courtyard Mgmt. Corp.*, 155 F. App'x 756, 758 (5th Cir. 2005). Plaintiff has not alleged that she was employed by Tulane for a fixed term and therefore her termination was wrongful because it was premature. Thus, the Court must only consider one question: Whether plaintiff's alleged disability discrimination was constitutionally or statutorily protected from the exercise of

19

arbitrary discretion of Tulane's right to terminate her? The answer to this question is no.

Plaintiff stated claims for disability discrimination under both Louisiana article 2315 and Section 504 of the Rehabilitation Act. As shown *supra*, plaintiff's claim for disability discrimination under the general catchall tort article 2315 fails because such a claim can only be asserted under the LEDL. Additionally, as shown *supra*, even if plaintiff had alleged Tulane violated the LEDL, that claim would still be dismissed as a matter of law given Tulane's status as a private, non-profit educational institution.

Turning to the Section 504 claim, plaintiff correctly asserts that Section 504 prohibits disability discrimination by recipients of federal funding. However, plaintiff did not take into account that the Americans with Disabilities Act ("ADA") and the Rehabilitation Act are interpreted *in pari materia*. *Frame v. City of Arlington*, 657 F.3d 215, 223 (5th Cir. 2011) (citing *Kemp v. Holder*, 610 F.3d 231, 234–35 (5th Cir. 2010); *Pace v. Bogalusa City Sch. Bd.*, 403 F.3d 272, 287–88, 289 n. 76 (5th Cir. 2005) (en banc)). The standard used to determine whether Tulane violated Section 504 is the exact same standard applied under Title I of the ADA.[7] *See Bailey v. Bd. of Commissioners of Louisiana Stadium*

---

[7] Although the standard for determining whether a violation occurred is the same between the two statutes, unlike the ADA, a plaintiff is not required to exhaust her administrative remedies prior to filing suit against a federal grantee under

& *Exposition Dist.*, 441 F. Supp. 3d 321 (E.D. La. 2020) (stating that to show a violation of either the ADA or Section 504, a plaintiff must prove the same three elements); *see also Flynn v. Distinctive Home Care, Inc.*, 812 F.3d 422, 426 (5th Cir. 2016).

Essentially, plaintiff must prove: (1) that she has a qualifying disability; (2) that she is being denied the benefits of services, programs, or activities for which the entity is responsible, or is otherwise discriminated against by the entity; and (3) that such discrimination is by reason of her disability. *Miraglia v. Bd. of Supervisors of Louisiana State Museum*, 901 F.3d 565, 574 (5th Cir. 2018); *Hale v. King*, 642 F.3d 492, 499 (5th Cir. 2011) (per curiam).

Plaintiff's claim under Section 504 cannot stand for the basis of her wrongful termination claim given she has not properly pled all required elements. First, plaintiff failed to allege what qualified disability she suffers from. She merely states that she has "preexisting, serious mental health disabilities requiring workplace sensitivity." Such conclusory assertions are not enough to satisfy pleading requirements. Further, plaintiff did not present any factual support for the notion that Tulane committed the alleged discriminatory act *because of* her disability. Because plaintiff has failed to properly plead all the elements required,

---

the Rehabilitation Act. *Webster v. Bd. of Supervisors of Univ. of Louisiana Sys.*, No. CIV.A. 13-6613, 2015 WL 4197589 (E.D. La. July 10, 2015).

her claim for wrongful termination based on disability discrimination in violation of Section 504 must be dismissed.

**iv.  State Law Negligence Claim Against Tulane**

Claims for negligent infliction of emotional distress and negligent failure to supervise are barred as a matter of law by the Louisiana Worker's Compensation Act, which provides the exclusive remedy for any claim of negligence against an employer. La. Rev. Stat. § 23:1032; *Jackson v. Country Club of Louisiana, Inc.*, No. CV 20-452-SDD-EWD, 2021 WL 261538 (M.D. La. Jan. 26, 2021; *Bertaut v. Folger Coffee Co*., No. CIVA 06-2437 GTP, 2006 WL 2513175, *3 (E.D. La. Aug. 29, 2006) (Zainey, J.) (dismissing plaintiff's claims against her employer for negligent infliction of emotional distress, failure to train and failure to supervise as they are barred by the Louisiana Workers' Compensation Statute); *Oramous v. Mil. Dep't,* No. CIV.A. 05-3677, 2007 WL 1796194, *9 (E.D. La. June 18, 2007) (Wilkinson, J.) ("Plaintiff's claims of negligent infliction of emotional distress and negligent failure to supervise are barred as a matter of law by the LWCA").

In their opposition, defendants argue that plaintiff's negligence claims fail because Louisiana's Workers Compensation Act ("LWCA") provides an exclusive remedy. After review, the Court finds that to the extent plaintiff asserts any negligence claims against Tulane, such claims fall within the exclusive remedy of the LWCA.

Plaintiff presented several negligence-based claims against Tulane for lack of proper oversight, poor policy implementation, and lack of supervision. However, because plaintiff was an employee of Tulane during the time of these alleged negligent actions, plaintiff's claims are barred under the LWCA. *Hilliard v. Parish*, 991 F. Supp. 2d 769 (E.D. La. 2014) (Milazzo, J.) ("Louisiana courts routinely dismiss negligence claims against employers arising in the course and scope of employment.") plaintiff further asserts that she suffered emotional distress from Tulane's negligent actions, contending that her emotional damages are not barred by the LWCA scheme. However, the LWCA's exclusive remedy is not rendered inapplicable just because plaintiff seeks damages for emotional injuries. *See Garcia v. Algiers Charter Sch. Ass'n, Inc.*, No. CV 17-8126, 2018 WL 1234961 (E.D. La. Mar. 9, 2018) (LWCA's "exclusive remedy extends to damages for emotional distress.") Because plaintiff's alleged injuries arise out of and in the course of her employment, plaintiff's negligence claims are barred by the LWCA and must be dismissed.

### v.   <u>**False Imprisonment and False Arrest Claims Against Tulane**</u>

In Louisiana, false arrest and false imprisonment are not recognized as separate torts. *Parker v. Town of Woodworth*, No. CA 11-1275,2012 La.App. LEXIS 256, at *7-8, 2012 WL 717355 86 So.3d 141 (La.App. 3 Cir.2012) (internal citations omitted). A claim for false arrest or false imprisonment under Louisiana law requires a

plaintiff to establish both: (1) proof of restraint; and (2) lack of legal authority. *Grant v. Gusman*, No. CV 17-2797, 2021 WL 1216528 (E.D. La. Mar. 31, 2021); *Vinas v. Serpas*, No. CIV.A. 10-3211, 2012 WL 2135286 (E.D. La. June 12, 2012); *Richard v. Richard*, 74 So.3d 1156, 1159 (La.2011). As such, false imprisonment "may not be predicated on a person's unfounded belief that [she] was restrained" when she was not. Hernandez v. Theriot, 709 F. App'x 755, 758 (5th Cir. 2017).

Plaintiff has failed to properly assert a cause of action for false imprisonment or false arrest. Instead of providing factual support of a restraint, plaintiff repeatedly stated in her complaint that Tulane instructed her to "immediately leave and vacate the Tulane clinic workplace." Rec. Doc. 9. Plaintiff's assertion is the exact opposite of what is required for her cause of action. Furthermore, plaintiff has not alleged any facts that she was ever confined or retrained on Tulane's premises to support a claim of false imprisonment. Accordingly, this claim is dismissed.

### vi. <u>Defamation Claims Against Tulane</u>

Defamation is a tort involving the invasion of a person's interest in his or her reputation and good name. *Sassone v. Elder*, 626 So.2d 345, 350 (La. 1993). To maintain a defamation action, the plaintiff must prove the following elements: "(1) a false and defamatory statement concerning another; (2) an unprivileged

publication to a third party; (3) fault (negligence or greater) on the part of the publisher; and (4) resulting injury." *Kennedy v. Sheriff of E. Baton Rouge*, 935 So.2d 669, 674 (La. 2006); *Henry v. Lake Charles American Press, L.L.C.*, 566 F.3d 164, 181 (5th Cir. 2009). If any of these elements is lacking, the cause of action fails. *Costello v. Hardy*, 2003-1146 (La. 1/21/04), 864 So. 2d 129, 139.

Here, plaintiff alleges three potential instances of defamation: (1) Tulane allowance of "details of the petitioner's separation from employment to become part of her employment record;" (2) Tulane's "negative references or comments;" and (3) Tulane's "ejection" of plaintiff from the workplace in front of spectators. Rec. Doc. 9. Upon review, none of these instances rise to the level of defamation.

   a. <u>Plaintiff's claim for defamation resulting from her employment record</u>

Plaintiff's defamation claim resulting from Tulane including details of her termination in her employment record must be dismissed given plaintiff failed to properly plead all required elements. First, plaintiff did not allege the existence of a false and defamatory statement regarding her termination that was subsequently included in her employment record. Instead, she puts forth only "conclusory allegations" that Tulane "defamed and slandered [the] petitioner's reputation." We need not accept these

unsupported allegations as true. *See Plotkin v. IP Axess Inc.*, 407 F.3d 690, 696 (5th Cir. 2005). Secondly, plaintiff did not allege that the statements allegedly made by Tulane in her employment record were published to a third-party. This is a fatal defect because, "[i]n Louisiana, statements between employees, made within the course and scope of their employment, are not statements communicated or publicized to third persons for the purposes of a defamation claim." *Williams v. United Parcel Serv., Inc.*, 757 F. App'x 342, 345 (5th Cir. 2018) (citing *Commercial Union Ins. Co. v. Melikyan*, 424 So.2d 1114, 1115 (La. Ct. App. 1982)). Accordingly, this claim must be dismissed.

   b. Tulane's alleged negative references

   Like the defamation claim *supra*, this claim must also be dismissed as plaintiff failed to properly plead all required elements. Once again, plaintiff points to no statements made by Tulane to constitute defamation. Rather, plaintiff merely states that she "*reasonably believes*" that Tulane's negative references contributed to her not being hired by another employer. Rec. Doc. 9. Not only has plaintiff not supplied the alleged negative references, but she has also failed to assert to whom these statements were published, i.e. the potential employers. Such unsupported allegations are not enough to defeat a motion to dismiss. *See Jacob v. Kopfler*, No. CV 04-1323, 2005 WL 8174246 (E.D. La. June 14, 2005) (stating a plaintiff must, "at a minimum,

identify the alleged defamatory statements, the maker of the statements, the date the statements were made or published, and the third parties to whom the statements were made or published.") Accordingly, plaintiff's defamation claim based on Tulane's alleged negative references must be dismissed.

    c. <u>Plaintiff's claim resulting from Tulane "ejecting" her from the premise.</u>

This claim must likewise be dismissed given Tulane's alleged ejection of plaintiff from its premises is not a statement at all but an action. Plaintiff needed to allege factual allegations that Tulane made a false and defamatory statement; but instead, the only thing plaintiff asserted was that Tulane defamed her "due to the exposure and spectacle" created by defendants allowing others to witness plaintiff getting ejected from the property. Rec. Doc. 9. Because plaintiff failed to assert that Tulane published any false words or statements, this defamation claim is also dismissed. *See Jackson v. Patterson*, No. 17-6361, 2018 U.S. Dist. LEXIS 103895, at *7 (E.D. La. June 21, 2018) (Lemmon, J.) (plaintiff must prove publication of "**words** which tend to harm the reputation of another so as to lower the person in the estimation of the community …") (emphasis added).

    **vii. Claim for Intentional Infliction of Emotional Distress Against Tulane**

To state a claim for intentional infliction of emotional distress, a plaintiff must allege that: (1) the defendant's conduct

27

was extreme and outrageous; (2) the emotional distress suffered by the plaintiff was severe; and (3) the defendant intended to inflict severe emotional distress, or knew that such distress would be certain or substantially certain to result from his conduct. *Brackens v. Stericycle, Inc.*, 829 F. App'x 17, 21 (5th Cir. 2020)*; Martin v. Am. Midstream Partners, LP*, 386 F. Supp. 3d 733 (E.D. La. 2019); *White v. Monsanto Co.*, 585 So.2d 1205, 1209 (La. 1991). To satisfy the first element, the defendant's conduct must "go beyond all possible bounds of decency, and ... be regarded as atrocious and utterly intolerable in a civilized community." *White*, 585 So.2d at 1209. Such conduct "does not extend to mere insults, indignities, threats, annoyances, petty oppressions, or other trivialities. *Id.* Persons must necessarily be expected to be hardened to a certain amount of rough language, and to occasional acts that are definitely inconsiderate and unkind." *Id.*

Recognition of a cause of action in a workplace setting is "usually limited to cases involving a pattern of deliberate, repeated harassment over a period of time." *See id.*; *see also Bustamento v. Tucker*, 607 So.2d 532, 538 (La.1992) (explaining that "this has been characterized as a sliding scale approach under which even relatively 'mild' harassment may become tortious if continued over a substantial period of time"). Moreover, cases arising in the workplace are limited to situations where the distress is "more than a reasonable person could be expected to

endure" and the offending conduct is "intended or calculated to cause severe emotional distress." *See Nicholas v. Allstate Ins. Co.*, 765 So.2d 1017, 1027 (La.2000).

Plaintiff claims that she was denied a private workspace and access to workplace accounts, excluded from work events, and denied the opportunity to present a "long-prepared for presentation." Rec. Doc. 9. Although plaintiff may have suffered from the above actions, none of these alleged acts rise to the level of "extreme and outrageous" conduct. *Deville v. Robinson*, 2013-832 (La. App. 3 Cir. 2/26/14), 132 So. 3d 1277 (stating a defendant cannot be held liable for "mere insults, indignities, threats, annoyances, petty oppressions, or other trivialities.") Additionally, being excluded from work events and not being able to present a prepared presentation are situations reasonable people are expected to endure on the job, and in fact do endure daily. Plaintiff also failed to properly allege that Tulane intended or calculated to cause her severe emotional distress. Therefore, plaintiff has not properly asserted a claim for intentional infliction of emotional distress against Tulane and this claim is dismissed.

### viii.   Federal Discrimination Claim Against Individual Tulane Defendants

Section 504 of the Rehabilitation Act provides:

> No otherwise qualified individual with a disability in the United States ... shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to

> discrimination under any program or activity receiving
> Federal financial assistance or under any program or
> activity conducted by any Executive agency or by the
> United States Postal Service.

*Duhon v. Bd. of Supervisors of Louisiana State Univ. & Agric. & Mech. Coll.*, No. CV 20-2022, 2021 WL 5562156 (E.D. La. Aug. 23, 2021). To state a claim under § 504, a plaintiff must allege: "(1) that he has a qualifying disability; (2) that he is being denied the benefits of services, programs, or activities for which the public entity is responsible, or is otherwise discriminated against by the public entity; and (3) that such discrimination is by reason of his disability." *Hale v. King*, 642 F.3d 492, 499 (5th Cir. 2011). Additionally, under § 504, the plaintiff must also "allege that the specific program or activity with which he or she was involved receives or directly benefits from federal financial assistance." *Block v. Texas Bd. of L. Examiners*, 952 F.3d 613, 619 (5th Cir. 2020) (quoting *Miller v. Tex. Tech Univ. Health Scis. Ctr.*, 421 F.3d 342, 345 (5th Cir. 2005) (en banc)).

A plaintiff cannot sue her supervisors individually for employment discrimination under Section 504 if those supervisors did not receive federal funding. *See Duhon v. Bd. of Supervisors of Louisiana State Univ. & Agric. & Mech. Coll.*, No. CV 20-2022, 2021 WL 5562156 (E.D. La. Aug. 23, 2021); *Flynn v. Distinctive Home Care, Inc.*, 812 F.3d 422, 430 (5th Cir. 2016); *Lollar v. Baker*, 196 F.3d 603 (5th Cir.1999). In *Lollar*, the Fifth Circuit

held that the plaintiff could not sue her supervisor individually for employment discrimination under Section 504 of the Rehabilitation Act, not because the supervisor was not the plaintiff's employer, but rather because the individual supervisor did not **herself** receive federal financial assistance. 196 F.3d 196 F.3d 603, 609 (5th Cir.1999) ("Here it is clear that [the state agency]—not [the plaintiff's supervisor]—is the program recipient of the federal financial assistance. Consequently, Lollar cannot sue [her supervisor], individually, under the [Rehabilitation] Act."); *see also Cole v. Velasquez*, 67 F. App'x 252 n.11 (5th Cir. 2003).

In this case, plaintiff alleges several claims against the individual Tulane defendants for violations of Section 504 of the Rehabilitation Act. Rec. Doc. 9. In response, defendants assert plaintiff cannot sue her supervisors individually for employment discrimination under Section 504 because that statute does not provide for individual liability. Rec. Doc. 10. The defendants are correct. Like the plaintiff in *Lollar* who could not sue her supervisors, this plaintiff also cannot sue the individual Tulane defendants under Section 504. Troy Smith, Nicole Smith, and Grinasha Dillon did not receive federal assistance; rather, their employer, Tulane, was the entity that received federal funds. Thus, the proper defendant for plaintiff's claim under Section 504 is Tulane and Tulane alone. *See Flynn v. Distinctive Home Care, Inc.*,

812 F.3d 422 (5th Cir. 2016). Accordingly, plaintiff's Section 504 claims against the individual defendants cannot stand, and thus are dismissed.[8]

### ix. **Plaintiff's Claims Against "Tulane Clinic" as an Individual Entity**

First and foremost, Rule 12(b) does not specifically authorize a motion to dismiss based on a lack of capacity to be sued. However, "[f]ederal courts...traditionally have entertained certain pre-answer motions that are not expressly provided for by the rules or by statutes" including motions raising a lack of capacity to sue or be sued. *Clark v. Lafayette Police Dep't*, No. 6:18-CV-00058, 2018 WL 3357899 (W.D. La. June 22, 2018), report and recommendation adopted, No. 6:18-CV-00058, 2018 WL 3357257 (W.D. La. July 9, 2018)(quoting 5C Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1360 (3d ed. 2004)). "The Fifth Circuit has implicitly approved 12(b) motions arguing the lack of capacity to be sued." *Darby v. Pasadena Police Dep't*, 939 F.2d 311, 3114 (5th Cir. 1991) (affirming that Pasadena Police Department had no jural existence and therefore was properly dismissed from suit); *Angers ex rel. Angers v. Lafayette Consol. Gov't*, 2007 WL 2908805, at *1 (W.D. La. Oct. 3, 2007). Therefore, the Court will consider Defendants' Rule 12(b)(6) motion to dismiss

---

[8] Defendant's motion to dismiss did not address plaintiff's claims against Tulane under Section 504 of the Rehabilitation Act. Therefore, Plaintiff's claim against defendant Tulane remains and is not subject to dismissal.

claims against "Tulane Clinic" based on a lack of capacity to be sued.

Federal Rule of Civil Procedure 17(b)(3) provides, in pertinent part, the "capacity to sue or be sued shall be determined by the law of the state in which the district court is held." Under the Louisiana Civil Code, there are two kinds of persons that are capable of being sued: natural persons and juridical persons. *See* La. Civ. Code art. 24. Article 24 defines a natural person as "a human being" and a juridical person as "an entity to which the law attributes personality, such as a corporation or partnership." *Id.* Juridical persons are "creature[s] of the law and by definition, [have] no more legal capacity than the law allows." *Angers ex rel. Angers v. Lafayette Consol. Gov't.*, 2007 WL 2908805, at *2. If a person is neither natural nor juridical, then it does not have procedural capacity to sue or be sued. *See Roy v. Alexandria City Council*, 984 So. 2d 191, 194 (La. App. 3 Cir. 5/7/08). "[I]n the absence of law providing that an entity may sue or be sued, the entity lacks such capacity." *Dantzler v. Pope,* No. CIV.A. 08-3777, 2009 WL 959508 (E.D. La. Apr. 3, 2009).

Although plaintiff did not name "Tulane Clinic" as a defendant in this matter, plaintiff continuously states that she is attempting to bring an individual cause of action against "Tulane Clinic." Rec. Doc. 9. In their motion to dismiss, defendants assert these claims against "Tulane Clinic" must be dismissed as the

entity cannot be sued. Rec. Doc. 10. Defendants present that
"Tulane Doctors Specialty Psychiatry Clinic" or "Tulane Clinic" is
not an independent corporation or juridical entity but rather a
part of Tulane University, and thus it lacks capacity to be sued.
Rec. Doc. 10. Given that "Tulane Clinic" is not an independent
corporation or juridical entity, it indeed lacks the capacity to
be sued.

   **x.   Plaintiff's Section 504 claim against Tulane for failure
          to Accommodate**

        In their motion to dismiss, defendants expressly stated that
it "does not address plaintiff's claims against Tulane under
federal law, specifically Section 504 of the Rehabilitation Act."
Rec. Doc. 10 at pg. 2. Defendants also went on to note that the
only Section 504 claim the motion addresses is the claim plaintiff
asserts against the individual Tulane defendants. Although
defendants clearly did not address plaintiff's Section 504 claim
against Tulane, such an analysis was required to evaluate whether
plaintiff's wrongful termination claim could stand. *See* subsection
three (3) discussion. As shown *supra*, plaintiff's claim under
Section 504 could not stand for the basis of her wrongful
termination claim given she did not properly plead all required
elements. Applying the same reasoning, plaintiff's claim for
failure to accommodate likewise fails because she has not pled
that she suffers from a qualified disability, or that Tulane denied

34

her accommodations *because of* her disability. Rec. Doc. 9 at pg. 26-27. Moreover, by plaintiff's own admissions, it would seem Tulane had in fact proposed reasonable accommodations to plaintiff, which she in turn accepted. Rec. Doc. 9 at pg. 27.

Given the similarity and overlap in the analysis between plaintiff's wrongful termination claim based on Section 504 and her claim against Tulane under the same subsection, there is no apparent reason to delay action on that claim. However and unless good cause for reconsideration is filed by **Friday February 18, 2022**, explaining why the foregoing analysis of the Section 504 claim should not lead to its dismissal, the instant dismissal order will be effective on the latter date.

Lastly, it would be fruitless to entertain further amendments to the complaint. Despite opportunities to address noted deficiencies at the state and federal levels, plaintiff merely restates the same allegations and general legal conclusions.

As found by the state court and now here, with additional findings relative to claims sounding in federal law, the instant action is dismissed subject to reconsideration as noted above.

New Orleans, Louisiana this 7th day of February, 2022

_____
SENIOR UNITED STATES DISTRICT JUDGE